Thank you, Your Honor. May it please the Court, my name is Carl Hosler. I've been appointed to represent Mr. Padgett. We have a heavy burden. We have to show that the District Court clearly erred and abused its discretion in its fact-finding and was plainly unreasonable in its sentencing. Our best argument concerns the fact-finding and it centers on a gunshot residue examination. The scenario that caused this is that Mr. Padgett, who has a lengthy criminal history and who is experienced with the federal system, unfortunately, was walking down the street at about 11.50 one night in order to go buy a beer. He was stopped in question concerning a shooting that had happened about 300 or 400 yards behind him. The original officer who took him into custody handcuffed Mr. Padgett. The record is not clear as to the identity of that officer. And Mr. Padgett very casually consented to return to the police headquarters, which was, again, just a few hundred yards away, so that Officer Erie, the eventual custodian for Mr. Padgett, could perform a gunshot residue test on him. The test was performed and at the hearing on this matter for this probation revocation, the State's expert witness testified that the gunshot residue exam showed that Mr. Padgett was the only man in the area. Somebody, he fit the description, somebody identified him after the fact and he had gunshot residue on his hand. He was not the only man in the area, Your Honor, and also he did not fit the description. The eyewitness described someone who was in blue jeans and wearing a hooded sweatshirt. Mr. Padgett, upon his arrest, was wearing black pants and a tight-fitting, under-armor, black t-shirt cut off at the arms. So he did not fit the description and that's the point. Then the area had gunshot residue on his hand, right? Yes. The court didn't have to believe that, did it? Didn't have to find he was the person, right? No. The court could, though. Your Honor, no. Again, based upon the examination of the State's expert, there are alternatives. It's not a slam dunk. I know, but alternatives just means that the court can pick one of those options, right? Yes, sir. And we would review that factual finding as to whether or not it's clearly erroneous. Correct, Your Honor, and we maintain that it is clearly erroneous. I stand to argue that it is. And our other point goes to sentencing, Your Honor, and we maintain that it was plainly unreasonable in light of just the nature of the circumstances. Again, my assumption is that the gunshot residue should be thrown out, the gunshot possession should be thrown out, and when you get down to what really occurred, according to my client, is that, yes, he made the foolish mistake of walking into a federal courthouse with a work knife in his back pocket. And yes, he did get involved in a domestic argument that was relatively minor in nature and got beyond what it should have been.  He did commit a battery, but it was a battery in which the victim had no interest in processing charges and the victim was unharmed. But the point is, he committed a battery against his wife, or who was that? No, it was the sister of his girlfriend. And it was an intentional touching, yes, it was, yes, it was. So he did indeed commit a battery. If we were to find the court was not clearly erroneous in finding that he possessed the weapon, do you then think his sentence on revocation was plainly unreasonable? That's our submission, Your Honor. You still think it is? Yes, that's our submission, Your Honor. Again, just based upon the 3553 factors, the circumstances surrounding the nature of the offense, that it just goes too far. It's more than the circumstances merit. I think we understand your argument. Why don't we hear what the government has to say, and then you can come up and we'll let you rebut everything they say. Do I have a time limit? I think you'll be able to do it in a lot of time. Thank you, it's a privilege. Good morning, Your Honors. May it please the Court, my name is Haley Bunn on behalf of the United States today. This Court should affirm the District Court's revocation of supervised release and the sentence in this case because ample evidence was presented to show that the defendant possessed a firearm in violation of the terms and conditions of the supervised release, and the sentence was not plainly unreasonable. In fact, it was presumptively reasonable because the District Court imposed a sentence that was within the guideline range suggested by the policy statement. You mean the policy statement range? Yes, Your Honor. The range suggested by the Chapter 7 policy statements when it comes to revocation of supervised release. As Judge Shedd pointed out during defense counsel's argument, there is evidence over and above the eyewitness testimony in this case or the gunshot residue. Defense counsel in his brief seems to focus on the credibility of the eyewitness. That bare assertion that she is not credible should fail because as this Court has noted several times, credibility determinations by triers of facts are rarely reviewable on appeal. So the government would submit that this is even a higher standard than just clear error because it is credibility that defense counsel is basing his argument on. And again, as Judge Shedd pointed out, the District Court relied not only on the identification of the defendant, his presence in the area. He's out and about. It's almost midnight or a bit after midnight when he's found wandering around in the area. He's also got gunshot residue not on one hand, but on both hands and on his face. And he tells the deputy, the officer in this case, that he has not been around anyone who's fired shots. And again, as Judge Shedd pointed out, the Court could have found that the eyewitness in this case was not credible, but she correctly found that this witness was credible. All this was consistent with the physical evidence that was found. And importantly, this eyewitness told deputies the area that she saw the defendant fire the shots, they went to that area, they recovered five shell casings. But you think we review factual findings for clear error? Yes, Your Honor. The standard here is very high and the defendant has not met his burden to show that there was clear error in this case. And again, that particular credibility determination even goes a bit farther in that, as the Supreme Court has put it, credibility determinations, if not internally inconsistent or inconsistent with physical evidence, should virtually never be clear error. And that's the case here. Because not only is the statement consistent with the physical evidence in the case, this eyewitness was consistent on the night of the incident, four months later, and then again during her testimony under oath at the District Court. Thank you very much. I think we understand your argument. Yes, Your Honor. Let Mr. Hostler give us a full-throated rebuttal. Yes, Your Honor. Thank you for your time. You also agree that the factual findings are reviewed for clear error, correct? Yes, ma'am. And our point in this case, my supposition, everyone's going to say, okay, if it didn't, if he didn't do it, where did the gunshot residue come from? Well, my supposition, for what little it's worth, he's handcuffed by an officer whose identity that we don't have. This occurred about 11 o'clock at night. What if that officer had been at the firing range before he came on shift at 11 o'clock? And we don't have anything in the record. I didn't handle this hearing below. We don't have anything in the record concerning that. We don't even have that officer's identity. Whose burden is that? Well, Your Honor, we'll maintain that it's the government's. Well, I mean, but once the government presented enough evidence to satisfy the trier fact, it seems to me that it was the defendant's burden to present this contrary theory. It wasn't theirs. Yes, sir. But I think it's, I mean, you know, maybe he would have been helped if he had been there below. Because that is a theory, right? That's like a theory you could hear on television. I mean, I've certainly scratched my head on this case. And that's the one plausible explanation that I can come up with. Well, we may see this case again then on collateral review. Okay. All right. Thank you, Your Honor. Thank you very much. Thank you. Counsel, I understand that you are appointed, court appointed to. And again, we very much appreciate that. Yes, ma'am. Privileged to be here. Thank you. We will come down and greet the lawyers and then go directly to our last case. All right.
judges: Diana Gribbon Motz, Dennis W. Shedd, Albert Diaz